Stephen B. Mosier, (AZ Bar #024847) (*pro hac vice*)
Norman P. Soloway, (MA Bar #24,315) (*pro hac vice*)
Clark E. Proffitt, (AZ Bar #026343) (*pro hac vice* )
**HAYES SOLOWAY P.C.**
4640 E. Skyline Dr.
Tucson, Arizona 85718
Phone: (520) 882-7623
Fax: (520) 882-7643
Email: smosier@hayes-soloway.com
Email: nsoloway@hayes-soloway.com
Email: cproffitt@hayes-soloway.com

Daniel N. Ballard, Esq. (CA Bar #219223)
SEQUOIA COUNSEL PC
770 L St., Suite 950
Sacramento, California 95608
Phone:  916.607.3904
Fax:  916.200.0601
Email: dballard@sequoiacounsel.com

*Attorneys for Plaintiffs SunEarth, Inc.,*
*And The Solaray Corporation*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| SUNEARTH INC.,  et al., <br><br> Plaintiffs, <br><br> vs. <br><br> SUN EARTH SOLAR POWER CO., LTD., et al., | Case No. CV-11-4991-CW <br><br> **PLAINTIFFS' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF  MOTION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF** <br><br> HEARING DATE: January 19th <br> HEARING TIME: 2:00 p.m. <br> JUDGE: Hon. Claudia Wilken <br> COURTROOM: 2 – 4th Floor |

I. INTRODUCTION ................................................................................................... - 1 -

II. STATEMENT OF THE ISSUES TO BE DECIDED ........................................ - 2 -

III. STATEMENT OF RELEVANT FACTS .......................................................... - 3 -

    1. The Plaintiffs. .......................................................................................... - 3 -

    2. SunEarth Inc., Owns Exclusive Rights to the Name and Mark
       SUNEARTH and Formulations Thereof Through Long And Continuous
       Use in the U.S. Marketplace.................................................................... - 3 -

    3. NINGBO Very Recently Adopted a Nearly Identical Name and Mark,
       Creating Confusion and Trading on SUNEARTH's Goodwill and
       Reputation in the United States Solar Power Market................................ - 5 -

IV. LAW.................................................................................................................. - 7 -

V. ARGUMENT ..................................................................................................... - 8 -

  A. Plaintiffs are likely to succeed on the merits........................................... - 8 -

    1. Plaintiffs are the Senior Users of the "SunEarth" Name and Mark In
       California and the United States............................................................. - 9 -

    2. Defendant NINGBO's Use of the "SunEarth" Name and Mark is Likely
       to Cause Confusion. ............................................................................. - 11 -

       a. The Similarity of the Names and Mark Supports a Finding of a
          Likelihood of Confusion. ......................................................... - 12 -

       b. The Proximity of the Goods Sold in the Solar Power Market
          Supports a Finding of a Likelihood of Confusion....................... - 12 -

       c. The Strength of the "SUNEARTH" Names and Mark Supports a
          Finding of a Likelihood of Confusion......................................... - 15 -

       d. The Concurrent Use of the Names and Mark has Already
          Engendered Actual Confusion and Supports a Finding of a
          Likelihood of Confusion. .......................................................... - 17 -

       e. The Similarity in Channels of Trade Supports a Finding of a
          Likelihood of Confusion. .......................................................... - 18 -

       f. The Type of Goods and the Degree of Care Likely to be
          Exercised by the Purchaser Supports a Finding of a Likelihood
          of Confusion.............................................................................. - 18 -

       g. Defendants' Actions Portray an Intent to Trade on Plaintiffs'
          Goodwill and Reputation. ......................................................... - 19 -

       h. The Likelihood of Expansion of the Product Lines Supports a
          Finding of a Likelihood of Confusion......................................... - 20 -

       i. All Relevant Factors Favor Determination of a Likelihood of
          Confusion and Supports a Finding of a Likelihood of
          Confusion. ................................................................................ - 21 -

  B. Plaintiffs are Likely to Suffer Irreparable Harm. ................................... - 22 -

  C. The Balance of the Equities and the Public Interest Weigh Heavily in Favor
     of a Preliminary Injunction. .................................................................... - 24 -

VI. CONCLUSION ................................................................................................ - 25 -

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adobe Sys. v. Kornrumpf*, 2011 U.S. Dist. LEXIS 80631, 11-12 (N.D. Cal. July 25, 2011)................................................................................................... - 7 -

*Alliance For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. Mont. 2011)....................................................................................................... - 7 -

*Am. Circuit Breaker Corp. v. Or. Breakers, Inc*., 406 F.3d 577, 582 (9th Cir. Or. 2005)...................................................................................................... - 9 -

*AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. Cal. 1979) .............................passim

*Amoco Production Co. v. Gambell*, 480 U.S., 531, 542 (1987)............................................. - 24 -

*Apple Computer, Inc. v. Formula Int'l Inc.*, 725 F.2d 521, 526 (9th Cir. 1984) .......... - 22 -, - 23 -

*Black Hills Jewelry* 633 F.2d at753 n.7 ............................................................................... - 25 -

*Brookfield Communs. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1054 (9th Cir. Cal. 1999).....................................................................................................passim

*Chalk v. U.S. Dist. Court Cent. Dist. of Cal.*, 840 F.2d 701, 704 (9th Cir. 1988) ......... - 7 -, - 24 -

*E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir. 1992) ................... - 16 -

*Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1148 (9th Cir. 2002) ............................ - 19 -

*GoTo.com,* 202 F.3d at 1205 n.3 ............................................................................. - 8 -, - 16 -

*Halicki Films, LLC v. Sanderson Sales and Mktg*., 547 F.3d 1213, 1225-26 (9th Cir. 2008) ...................................................................................................... - 8 -

*Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 184 F.3d 1107, 1111 (9th Cir. 1999)....................................................................................................... - 19 -

*Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 n.8 (9th Cir. 1998) .......................................................................................... - 16 -

*Lindy Pen Co. v. Bic Pen Corp*., 796 F.2d 254, 256-57 (9th Cir. 1986)..................... - 12 -, - 15 -

*Miller v. Glenn Miller Prods*., 454 F.3d 975, 979 (9th Cir. Cal. 2006) ................................... - 9 -

*Mortgage Elec. Registration Sys. v. Brosnan*, 2009 U.S. Dist. LEXIS 87596 (N.D. Cal. Sept. 4, 2009)......................................................................................passim

*Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137, 1144 (9th Cir. Cal. 2011) ......................................................................................... - 8 -

*Nutri/System, Inc. v. Con-Stan Industries, Inc*., 809 F.2d 601, 605 (9th Cir. Cal. 1987)....................................................................................................... - 15 -

*Palantir Techs. Inc. v. Palantir.net, Inc.*, 2008 U.S. Dist. LEXIS 6448, 2008 WL 152339 at *6 (N.D. Cal. 2008) ........................................................................ - 13 -

*Person's Co. v. Christman*, 900 F.2d 1565 (Fed. Cir. 1990) ................................................ - 10 -

*Playboy*, 354 F.3d at 1028........................................................................................... - 18 -

*Rent-a-Center, Inc. v. Canyon Television & Appliance*, 944 F.2d 597, 603 (9th Cir. 1991) ...................................................................................................... - 22 -

*Rodeo Collection Ltd. v. West Seventh*, 812 F.2d 1215, 1219 (9th Cir. 1987)) ..................... - 12 -

*Sardi's Restaurant Corp. v. Sardie*, 755 F.2d 719, 724 (9th Cir. Cal. 1985) ......................... - 22 -

*Sengoku Works v. RMC Int'l*, 96 F.3d 1217, 1219 (9th Cir. Cal. 1996)...............- 9 -, - 10 -, - 11 -

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. Cal. 1984) ............................................................................................................... - 24 -

*Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001) ..................................................................................................... - 22 -

*Surgicenters of America v. Medical Dental Surgeries*, 601 F.2d 1011 (9th Cir. 1979) ..................................................................................................................................... - 15 -

*Thalheimer v. City of San Diego*, 2011 U.S. App. LEXIS 11590 (9th Cir. Cal. June 9, 2011) ...................................................................................................................... - 7 -

*Winter v. NRDC*, 555 U.S. 7, 24-25, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008) ...................... - 7 -

**Statutes**

15 U.S.C. § 1125 ..................................................................................................................................... - 8 -

**Other Authorities**

J. McCarthy, Trademarks & Unfair Competition § 27:5A, at 250-251 (1973) ...................... - 27 -

J. McCarthy, Trademarks & Unfair Competition § 9:3 at p. 11-12, 16, (2010) ...................... - 8 -

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD;

Please take notice that on January 19th, 2011, at 2:00 p.m., or as soon thereafter as the parties may be heard, Plaintiffs, SunEarth, Inc., and The Solaray Corporation, (hereinafter collectively, "SUNEARTH"), will move this Court, at the United States Courthouse located at for immediate issuance of a preliminary injunction.

Plaintiffs' preliminary injunction motion will ask the Court to enjoin Sun-Earth Solar Power Co., Ltd., and its United States subsidiary/distributor NBSolar USA Inc. (hereinafter collectively "**Defendants**" or "**NINGBO**"), and all persons acting pursuant to their direction and control, from willfully infringing upon SUNEARTH's trademark, trade name, service mark and other intellectual property during the pendency of this action.[1]

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

Plaintiff SunEarth, Inc. is a California corporation founded in 1978 that has manufactured and sold solar collectors in California and throughout the United States since that time. SUNEARTH has a long history in the solar energy field and has earned a reputation for quality and durability in that long history. By 2000, Popular Science referred to SUNEARTH as "one of the largest producers of solar collectors in the United States," Solar Today states that SUNEARTH has "been a solar water heating player since 1978," and among "Energy Leaders" SUNEARTH has established a reputation of "proven capability…to outperform the competition." Due in part to SUNEARTH's prominent role and reputation, SUNEARTH collectors were even installed on the White House in 2003.

---

[1] Plaintiffs are ONLY seeking injunctive relief as a remedy in this action and have chosen, at the moment, not to seek monetary damages from Defendants (other than their reasonable attorneys' fees).  Complaint at Prayer ¶¶(a) – (g).

Defendant **NINGBO** is a Chinese limited liability corporation that entered the international market in 2004. Beginning in 2004, **NINGBO** began selling solar photovoltaic modules under the brand "SUN-EARTH" in Europe and Australia. In the United States, however, **NINGBO** created an entirely separate brand, portraying itself as "NBSolar" to customers in the United States.

Recently, **NINGBO** has apparently abandoned its established U.S. brand, and has begun to aggressively market itself in the United States and California in particular as "Sun Earth." **NINGBO**'s use of the term "Sun Earth" has caused actual confusion and is likely to cause additional confusion among current and prospective customers of **SUNEARTH** in violation of **SUNEARTH**'s senior rights to the trade name, trademark, and service mark "SUNEARTH," established through years of consistent use in the marketplace (the company name, trade name, trademark, logo, domain name, and other uses of "Sun Earth" and formatives thereof by SunEarth are hereinafter referred to as the "SUN EARTH MARK").

**NINGBO**'s continued use of **SUNEARTH**'s name and mark must be enjoined to protect the valuable goodwill that consumers of solar panel products have long attributed to **SUNEARTH** and to protect those consumers from further confusion.

## II. STATEMENT OF THE ISSUES TO BE DECIDED

1.     Whether **SUNEARTH** owns nationwide rights in the "SunEarth" trade name and trademark to brand solar panel products due to its commercial use of that term before **NINGBO** began using "Sun-Earth" in the United States to brand itself and its solar power products.;

2.     Whether **NINGBO**'s recent use of "Sun-Earth"  as a trade name, trademark and domain name is likely to cause confusion among consumers of solar panel products in light of **SUNEARTH**'s prior use of its "SunEarth" trade name, trademark and domain name;

3.     Whether **SUNEARTH** will suffer a likelihood of irreparable injury should Ningbo be allowed to continue to use "Sun-Earth" as a trade name, trademark and domain name during the pendency of this lawsuit; and

4.      Whether the balance of equities favors enjoining **NINGBO** from continuing to the SUNEARTH MARK.

### III. STATEMENT OF RELEVANT FACTS

**1.      The Plaintiffs.**

Plaintiff, SunEarth, Inc., a corporation duly organized and existing under the laws of the state of California, was founded under that name in 1978. **Reed Decl.** at ¶ 2. Specializing in solar thermal collectors and systems, **SUNEARTH** continued to flourish where most of the industry failed in the absence of federal government incentives. *Id*. at ¶ 4. In addition to manufacturing liquid flat plate solar collectors and mounting hardware and other components related thereto, SunEarth, Inc. has been selling rail mounting systems for photovoltaic modules since June of 2003. *Id*. at ¶ 8. In particular, **SUNEARTH**'s SunEarth CompRail hardware can accommodate any generic photovoltaic module, including those produced by **NINGBO**. *Id*.

Hoping to acquire the manufacturing capabilities and goodwill of the "SunEarth" name brand, Plaintiff The Solaray Corporation (hereinafter "**SOLARAY**") purchased a majority of common stock of SunEarth, Inc., in 1992.  *Id*. at ¶ 5. By an agreement effective  July 1, 1992, the entire right, title and interest of **SUNEARTH** in and to any trademarks, trade names or associated marks together with the good will of the business in connection with which the trademarks are used, was assigned to **SOLARAY**. *Id*. **SOLARAY** has independently operated **SUNEARTH** under that same name and mark since 1992 (up to and including this day)**.** *Id*. at ¶4-6.

**2.      SunEarth Inc., Owns Exclusive Rights to the Name and Mark SUNEARTH and Formulations Thereof Through Long And Continuous Use in the U.S. Marketplace.**

Operating as a subsidiary of **SOLARAY**, but at all times under its original "SunEarth" name and mark, SunEarth, Inc**.** has purchased a five-acre parcel in Fontana, California, constructed a custom manufacturing facility with expanded office space, rooftop solar testing

- 3 -

and training room and an expanded sales and engineering team. *Id.* at ¶ 6.  **SUNEARTH** more than quadrupled its production capacity from 2003 to today. *Id.* Today, **SUNEARTH** can produce 85,000 liquid flat plate collectors (approximately 170 MW thermal equivalent) every year, and has established strategic partnerships in the U.S., Europe, and Australia. *Id.*

Since adopting and using the term "SUN EARTH" as a company name and trade name, and using as a trademark, logo and a domain name the term SUN EARTH, and formatives thereof in connection with the manufacture, sale and servicing of solar energy collectors and related goods and services in 1978, **SUNEARTH** has used and expanded the mark extensively. See *Id.* at ¶ 8.  For example, **SUNEARTH** has been marketing the "SunEarth Empire" series of products since early 1987, the "SunEarth Copperheart" products since 1992, the "SunEarth SunSiphon" products since at least January 1994, the "SunEarth CompRail" products since June, 2003, and "SunEarth" differential controls since 2004.  *Id.* In particular, **SUNEARTH** has marketed and sold the SunEarth CompRail system for mounting photovoltaic modules such as those sold by **NINGBO** since 2003. *Id.* at ¶¶ 8 and 89, and Exhibit 22 thereto.

> **3.  SUNEARTH Has Extensively Promoted the SUNEARTH Name and Mark and has Achieved Substantial Goodwill and Reputation in the Marketplace.**

**SUNEARTH** has established a reputation for proven quality products. By 2000, Popular Science referred to **SUNEARTH** as "one of the largest producers of solar collectors in the United States." *Id.* at ¶ 84 and Exhibit 17 thereto.  Solar Today states **SUNEARTH** has "been a solar water heating player since 1978." *Id.* at ¶ 72 and Exhibit 3 thereto at p. 5 (magazine page 45). "SunEarth" solar collectors have gained widespread and considerable notoriety in the industry, and indeed, **SUNEARTH** collectors were even installed on the White House in 2003, *Id.* at ¶¶ 9 and 72 and Exhibit 3 thereto. **SUNEARTH**'s long history of success recently led Energy Leaders Today magazine to state, "In today's world of climate change, energy and resource insecurity and gyrating energy prices, the proven capability of the Solaray Corporation family of

companies to outperform the competition makes this group more attractive than ever before." *Id* at ¶ 78 and Exhibit 11 thereto. As Solar Today stated in 2004, **SUNEARTH**'s "global staying power is based on a reputation for proven, work-horse products." *Id.* at ¶ 72 and Exhibit 3 thereto at p. 5 (magazine page 45).

> ### 3. **NINGBO Very Recently Adopted a Nearly Identical Name and Mark, Creating Confusion and Trading on SUNEARTH's Goodwill and Reputation in the United States Solar Power Market.**

The Chinese company which is the Defendant in this case is new to the United States market. According to its website, **NINGBO** "received its name plate" in 1999. *Id*. at ¶ 77 and Exhibit 10 thereto at p. 3. **NINGBO** concentrates its efforts on solar photovoltaic modules, and **NINGBO**'s "products are widely applied in different fields such as big on-grid ground solar plant, on-grid roof solar systems, home solar system [sic] in remote area [sic], solar power system [sic] in communication, solar street lamps, and solar traffic signal lamp [sic] etc." *Id*. at p. 2.

Under the name Ningbo Solar Electric Power Co., Ltd., **NINGBO** filed an application for a trademark with the United States Patent and Trademark Office (Hereinafter "USPTO") for the mark "SUN-EARTH design plus words" as depicted below, claiming a first use in commerce of July 2, 2010. *Id*. at ¶ 80 and Exhibit 13 thereto.



In November, 2010, **NINGBO** registered the new web domain name www.Sunearthpower.com. *Id*. at ¶ 44. Around that same time, according to **NINGBO**'s own website, a company by the name of Sun-Earth Solar Power Co. Ltd. (Defendant **NINGBO**, albeit under its current name) was established in 2010, though even today **NINGBO** states on its website that "'Sun-Earth' is

known as 'Nbsolar' in the United States of America." *Id*. at ¶ 77 and Exhibit 10 thereto at p. 1, 12. **NINGBO**'s trademark application was registered on the Principal Register to Ningbo Solar Electric Power Co. Ltd. on December 7, 2010 as Registration No. 3,886,941. *Id*. at ¶ 80 and Exhibit 13 thereto.

On April 1, 2011, Plaintiff **SUNEARTH** filed a proceeding with the United States Patent and Trademark Office (the "USPTO") seeking cancellation of **NINGBO**'s SUN-EARTH PLUS DESIGN mark. *Id*. at ¶ 14. **NINGBO** is contesting the cancellation proceeding and as of October 10, 2011 has refused to cease and desist use of Plaintiff's name and mark. *Id*. at ¶ 69. *See also* **Mosier Decl.** at ¶¶ 1-8 and exhibits 28-32. On April 28, 2011, **NINGBO** recorded an Assignment of Registration No. 3,886,941 with the USPTO reflecting a conveyance by **NINGBO** of the registration to **NINGBO**'s successor in interest, doing business as Sun-Earth Solar Power Co. Ltd., ostensibly because Ningbo Solar Electric Power Co. Ltd. changed its name to Sun-Earth Solar Power Co. Ltd sometime in 2010. **Reed Decl.** at ¶ 81 and Exhibit 14 thereto. **NINGBO** has been increasingly brazen in identifying itself with Plaintiffs' "SunEarth" brand, name and mark since that time. *Id*. at ¶¶ 15-18. **NINGBO** registered for the InterSolar North America conference held July 9-12 in San Francisco, California, as "Sun-Earth Solar Power/Nbsolar USA". *Id*. at ¶ 16. **NINGBO** registered for the Solar Power International conference, the largest trade show for the solar industry on October 17-20 in Dallas, Texas, as a "Megawatt Sponsor" of the Solar Power International conference, listed only as "Sun-Earth." **Urbalejo Decl.** at ¶ 4 and Exhibit 33 thereto.

**NINGBO** now holds itself out in the United States as if it were the "SunEarth, Inc.," California Corporation which has done business in the solar field in the U.S. since 1978. Defendant **NINGBO** quite clearly and blatantly is attempting to misappropriate and trade off of Plaintiffs' name and mark, and will continue to do so unless enjoined. **Reed Decl.** at ¶ 36.

SUNEARTH brought suit in this Court against NINGBO on October 11, 2011.  SUNEARTH has recently received a number of complaints that NINGBO's use of SUNEARTH's name is leading to substantial actual and potential confusion in the market for solar collectors, a market in which both Plaintiffs and Defendant directly compete. *Id.* at ¶¶ 40, 66.

SUNEARTH respectfully requests entry of a preliminary injunction directed to NINGBO's infringing actions throughout the United States, so that NINGBO will be prohibited from irreparably damaging the goodwill of SUNEARTH by causing further confusion in the marketplace.

## IV. LAW

Generally, a party is entitled to preliminary injunctive relief under the rules of equity if it can establish a likelihood of success on the merits, a likelihood of irreparable harm suffered in the absence of preliminary relief, that the balance of equities tips in its favor, and that entry of an injunction is in the public interest. *Thalheimer v. City of San Diego*, 2011 U.S. App. LEXIS 11590 (9th Cir. Cal. June 9, 2011) (citing *Winter v. NRDC*, 555 U.S. 7, 24-25, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008)). This Circuit has adopted a sliding scale approach under which a likelihood of success raises "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the Winter test are also met." *Alliance For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. Mont. 2011); *see also, Adobe Sys. v. Kornrumpf*, 2011 U.S. Dist. LEXIS 80631, 11-12 (N.D. Cal. July 25, 2011). The basic function of a preliminary injunction is to preserve the status quo pending a determination of the outcome on the merits. *Chalk v. U.S. Dist. Court Cent. Dist. of Cal.*, 840 F.2d 701, 704 (9th Cir. 1988). Here, the status quo of the parties is that consumers in the solar power field in the United States associate Plaintiff

SUNEARTH with the SUNEARTH MARK,[2] while NINGBO is, according to NINGBO's own website front page, "known as NBSolar in the United States."  **Urbalejo Decl.** at ¶ 6 and Exhibit 34 thereto, and Reed Decl. at ¶77 and Exhibit 10 thereto at p. 1, 12.

## V. ARGUMENT

### A.      Plaintiffs are likely to succeed on the merits.

To succeed on the merits of a claim of infringement of an unregistered trade name, service mark or trademark under the Lanham Act, 15 U.S.C. § 1125, a party "must prove: (1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137, 1144 (9th Cir. Cal. 2011). Both registered and unregistered trade names and trademarks are subject to protection under the Lanham Act. *Mortgage Elec. Registration Sys. v. Brosnan*, 2009 U.S. Dist. LEXIS 87596 (N.D. Cal. Sept. 4, 2009) (*citing Halicki Films, LLC v. Sanderson Sales and Mktg.*, 547 F.3d 1213, 1225-26 (9th Cir. 2008); *see also GoTo.com*, *Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 at n.3 (9th Cir. 2000)(noting that "the same standard" applies to infringement claims, irrespective of whether the marks or names are registered).).

_____

[2] **SUNEARTH** uses the term "SUNEARTH" as a trade name, trademark, and service mark. **Reed De**cl. at ¶ 7. McCarthy describes the interaction between names, trademarks, and service marks as "closely intertwined":

> "Protection for corporate business and professional names—that is, trade names—is closely intertwined with protection for trademarks and service marks. . . . Defendant's use of the professional or corporate name of plaintiff as a trademark on goods may be characterized as infringement or unfair competition. Conversely, defendant's use of plaintiff's trademark as part of defendant's corporate title and name, can be viewed as trademark infringement. . . . The Ninth Circuit Court of Appeals has rejected the argument that trade name infringement must be determined differently from that of trademarks . . .."

J. McCarthy, Trademarks & Unfair Competition § 9:3 at p. 11-12, 16, (2010) (*citing Accuride Intern., Inc. v. Accuride Corp.*, 871 F.2d 1531, 1536 (9th Cir. 1989). See also, *Mortgage Elec. Registration Sys. v. Brosnan*, 2009 U.S. Dist. LEXIS 87596 at pp. [*9]-[*10] (N.D. Cal. Sept. 4, 2009).

Plaintiffs are likely to succeed on the merits of the Lanham Act and California trademark infringement claims because Plaintiffs consistently have been using the trademark in the United States (and more specifically but without limitation, in the States of California and Texas) for several decades before Defendant's acknowledged recent first use in 2010, and **Defendant NINGBO**'s use of Plaintiffs' **SUNEARTH**'s mark is likely to cause consumer confusion.

**1.    Plaintiffs are the Senior Users of the "SunEarth" Name and Mark In California and the United States.**

Trademark rights attach solely based upon **use** of the mark in commerce. *Mortgage Elec. Registration Sys. v. Brosnan*, 2009 U.S. Dist. LEXIS 87596 (N.D. Cal. Sept. 4, 2009) ("For purposes of trademark protection, it is the date of first use that is critical."); *Miller v. Glenn Miller Prods.*, 454 F.3d 975, 979 (9th Cir. Cal. 2006) ("Registration does not create a mark or confer ownership; only use in the market-place can establish a mark."). Registration provides no additional substantive rights against infringement as against previously-acquired (senior) common law rights. *Id*. In order to show protectable ownership in a mark, the trademark holder must show (1) priority of use of (2) a distinctive mark. *Sengoku Works v. RMC Int'l*, 96 F.3d 1217, 1219 (9th Cir. Cal. 1996). ("It is axiomatic in trademark law that the standard test of ownership is priority of use. To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services.").

In *Sengoku Works*, the Ninth Circuit clarified the role of a federal registration of the mark in the ownership analysis:

> When proving ownership of a trademark, federal registration of the mark is prima facie evidence that the registrant is the owner of the mark. . . . However, the non-registrant can rebut this presumption by showing that the registrant had not established valid ownership rights in the mark at the time of registration - in other words, if the non-registrant can show that he used the mark in commerce first, then the registration may be invalidated.

*Id*. at 1219-1220 (citations omitted).

Seniority and thus ownership of a mark is determined based on priority of use in the territory at issue. *Am. Circuit Breaker Corp. v. Or. Breakers, Inc*., 406 F.3d 577, 582 (9th Cir. Or. 2005)("Under the territoriality principle, a "trademark has a separate legal existence in each country and receives the protection afforded by the laws of that country."); *Person's Co. v. Christman*, 900 F.2d 1565 (Fed. Cir. 1990). ("The senior user is the one whose mark was first used or achieved fame in the United States."). Under the Territoriality Principle, priority under the Lanham Act may be established by use of the mark in the United States, and priority under the laws of each state (for example, of California or Texas) may be established by first use of the mark in each such state. *See id*.

NINGBO's "SUN-EARTH design plus words" mark, affords a presumption of ownership dating to the filing date of the application, December 12, 2008. *Sengoku Works*, 96 F.3d at p. 1219-1220; **Reed Decl.** at ¶ 81 and Exhibit 14 thereto. Defendant's own website states that the Chinese company NINGBO did not "receive its name plate" until 1999. *Id**. at ¶ 77 and Exhibit 10 thereto at p. 3. Indeed, as of November 3, 2011, Defendant's own web site states: "Sun-Earth is known as Nbsolar in the United States of America." **Urbalejo Decl**. at ¶6 and Exhibit 34 thereto. The trade name currently used by NINGBO, "Sun Earth Solar Power Co. Ltd," was itself apparently not established by Defendants until 2010, (Reed Decl. at ¶¶ 77 and 81, and Exhibits 10 (page 3) and 14 thereto) and the domain name "www.sunearthpower.com" was not registered by Defendants until November, 2010. *Id*. at ¶ 44.

In contrast, Plaintiff SunEarth, Inc. was founded in 1978 and registered as a California corporation under the trade name SunEarth, Inc. <u>in 1978</u>, and has consistently **used** the term "SunEarth" as a trademark, trade name, and service mark since that time, and throughout the United States (including without limitations in the states of California and Texas), for now more than 33 years. *Id*. at ¶¶ 8, 70, and 71 and Exhibits 1 and 2 thereto. For example, SUNEARTH has sold the "SunEarth Empire" since 1987, the "SunEarth Copperheart" since 1992, the "SunEarth

SunSiphon" since at least January 1994, the "SunEarth CompRail" since June, 2003, and "SunEarth" differential controls since 2004.  *Id*. at ¶ 8.

By 2000, Popular Science referred to **SUNEARTH** as "one of the largest producers of solar collectors in the United States." *Id.* at ¶ 84 and Exhibit 17 thereto.  Solar Today states **SUNEARTH** has "been a solar water heating player since 1978." *Id.* at ¶ 72 and Exhibit 3 thereto. Among "Energy Leaders" **SUNEARTH** has established a reputation of "proven capability…to outperform the competition." *Id.* at ¶78 and Exhibit 11 thereto.  "SunEarth" solar collectors have gained widespread and considerable notoriety in the industry, and indeed, **SUNEARTH** collectors were even installed on the White House in 2003, (*Id.* at ¶¶ 9 and 72 and Exhibit 3 thereto) long before **NINGBO** first commenced marketing its "SunEarth modules" in the United States. Indisputably, Plaintiffs began using the name and mark in the United States long, long before Defendant **NINGBO** first decided to adopt that same name for use in the United States. *Id.* at ¶¶ 76, 77, 80 and 81 and Exhibits 9, 10, 13 and 14 thereto.

At an absolute minimum, **SUNEARTH** has proven by a preponderance of the evidence (throughout the concurrently-filed Reed Declaration) that **SUNEARTH** "used the mark in commerce first." *Sengoku Works*, 96 F.3d at p. 1219-1220, thus establishing a likelihood of success on the merits regarding **SUNEARTH**'s ownership of the marks at issue.

> **2.**     **Defendant NINGBO's Use of the "SunEarth" Name and Mark is Likely to Cause Confusion.**

The Ninth Circuit has identified a non-exhaustive list of eight relevant factors that may be used as "helpful guideposts" for determining whether consumers would likely be confused by use of similar marks on related goods:

> "[1] strength of the mark; [2] proximity of the goods; [3] similarity of the marks; [4] evidence of actual confusion; [5] marketing channels used; [6] type of goods and the degree of care likely to be exercised by the purchaser; [7] defendant's intent in selecting the mark; and [8] likelihood of expansion of the product lines."

*AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. Cal. 1979); The Ninth Circuit has further clarified that "[s]ome factors are much more important than others, and the relative importance of each individual factor will be case-specific." *Brookfield Communs. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1054 (9th Cir. Cal. 1999). The similarity of the marks, proximity of the goods and marketing channels used are the most important factors in the *Sleekcraft* analysis. *Mortgage Elec. Registration Sys. v. Brosnan*, 2009 U.S. Dist. LEXIS 87596 (N.D. Cal. Sept. 4, 2009).

> a. The Similarity of the Names and Mark Supports a Finding of a Likelihood of Confusion.

The more similar the marks in question are to each other in terms of appearance, sound, and meaning, the greater the likelihood of confusion. *Brookfield* 174 F.3d at 1054. Similarities between the marks must be weighed more heavily than differences. *Rodeo Collection Ltd. v. West Seventh*, 812 F.2d 1215, 1219 (9th Cir. 1987)).

While **NINGBO**'s "SUN-EARTH design plus words" mark has a partially different appearance from **SUNEARTH**'s trade name "SunEarth, Inc." and service mark and trade mark "SunEarth," the sound, meaning, and appearance of the text of both Plaintiff's "SunEarth" mark and **NINGBO**'s infringing use are identical. This factor clearly weighs very heavily in favor of Plaintiff **SUNEARTH**, the senior user of the mark. *See, Brookfield,* 174 F.3d at 1055.

> b. The Proximity of the Goods Sold in the Solar Power Market Supports a Finding of a Likelihood of Confusion.

Related goods are generally more likely than unrelated goods to confuse the public as to the producers of the goods. *See Official Airline Guides v. Goss*, 6 F.3d 1385, 1392 (9th Cir. Or. 1993) (*citing Sleekcraft*, 599 F.2d 341 at 350). In light of the substantially identical nature of the marks here at issue, if they were used with identical products or services, likelihood of confusion would follow as a matter of course. *See Lindy Pen Co. v. Bic Pen Corp.*, 796 F.2d 254, 256-57 (9th Cir. 1986) (reversing a district court's finding of no likelihood of confusion

- 12 -

even though the six other likelihood of confusion factors all weighed against a finding of likelihood of confusion). Plaintiffs' and Defendants' respective goods need not be direct competitors if it is apparent that their respective businesses are sufficiently related to result in consumer confusion. *See Palantir Techs. Inc. v. Palantir.net, Inc.*, 2008 U.S. Dist. LEXIS 6448, 2008 WL 152339 at *6 (N.D. Cal. 2008) (use of identical marks likely to cause confusion where plaintiff and defendant's goods and services were related generally to the computer software industry); *Mortgage Elec. Registration Sys. v. Brosnan*, 2009 U.S. Dist. LEXIS 87596, 15-16 (N.D. Cal. Sept. 4, 2009)

The "relatedness" of the goods and the direct competitive positions of Plaintiffs' and Defendants' goods are more fully explained in the Declaration of Richard Reed at ¶¶ 54-62. When a homeowner or a business wants to lower energy bills with solar technology, that consumer has the option of two partially complementary technologies: Photovoltaic and solar thermal collectors. *Id.* at ¶ 51, 54. Here, **SUNEARTH**'s principal and mainstay products have been solar thermal collectors and related goods and services, while **NINGBO** sells solar photovoltaic cells and related goods and services. *Id*. at ¶¶ 55, 58, 77 and Exhibit 10 thereto. Both technologies convert the energy of the sun for practical use. *See, Id*. at ¶ 54.

As the name implies, solar thermal collectors such as those both manufactured and sold by plaintiffs **SUNEARTH** collect the heat of the sun and transfer that heat to a fluid. *Id*. at ¶ 55. Heating water accounts for about 25 % of the average American home user's energy use, and the most common use of solar collectors is applied to solar hot water panels in home or industrial use. *Id*. at ¶ 56. Solar collectors can also be used to heat swimming pools or for space heating purposes and are sometimes used in expansive arrays to boil water used for power production on a larger scale. *Id*. **SUNEARTH** sells solar collectors, components for mounting collectors and photovoltaic cells, related components such as fluid tanks, mounts, fasteners, and

heat exchangers, among others, and complete solar heating systems for home or industrial use. *Id*. at ¶ 57, and ¶¶ 8 and 89, and Exhibit 22 thereto.

In photovoltaic cells, light from the sun creates a voltage in the cell, which is used to create an electric current. *Id*. at ¶ 58. The electric current can be used to heat water or for any other energy demand. *Id*. Photovoltaic systems may accordingly be used for a greater variety of applications, but are also less efficient than solar thermal collectors. *Id*. Because the electricity produced from photovoltaic systems can also be used to heat water, solar technology consumers may choose to apply only a solar thermal collector for hot water or space heating applications at a low cost, or alternatively, only a photovoltaic system at high cost for all applications, or alternatively, some combination of photovoltaic and solar thermal collectors to try to maximize efficiency and lower costs for all applications. *Id*. at ¶ 61. In addition, heat may also build up on a photovoltaic cell, and some systems transfer that heat to a fluid, using the photovoltaic as a sort of less efficient solar thermal collector. *Id*. at ¶ 54. Similarly, some components of a solar thermal system may require electricity and will integrate photovoltaic cells to complement the system. *Id*. While SUNEARTH does not currently manufacture photovoltaic cells or modules, SUNEARTH has, since 2003, marketed and sold the SunEarth CompRail system for mounting photovoltaic modules such as those sold by NINGBO since 2003. *Id*. at ¶¶ 8 and 89, and Exhibit 22 thereto. Moreover, the SunEarth Solaray water heating system is available with a pump that may be plugged in to an AC current source or with a photovoltaic-powered pump. *Id*. at ¶¶ 54, 90, and Exhibit 23 thereto.

SUNEARTH collectors are primarily sold to merchants, contractors and builders to heat water and interior spaces for homes and buildings. *Id*. at ¶ 57. NINGBO states that its "Sun Earth" products "are widely applied in different fields such as big on-grid ground solar plant, on-grid roof solar systems, home solar system in remote area, solar power system in communication, solar street lamps, and solar traffic signal lamp etc." *Id*. at ¶ 77 and Exhibit 10

thereto at p. 2. Accordingly, **NINGBO**'s solar photovoltaic products and services are in direct competition with **SUNEARTH**'s solar collector products and services for space on the homes or facilities of customers interested in using solar power. *See, Id*. at ¶¶ 54-62.

The clear competition between solar hot water systems and solar photovoltaic systems is well known in the solar power trade, to a point beyond good-faith dispute. *Id*. at ¶¶ 85 and 86 and Exhibits 18 and 19 thereto. Indeed, **SUNEARTH** advertises and maintains a demonstration installation directly comparing **SUNEARTH** solar thermal collectors to a comparable solar photovoltaic system: (As more fully discussed in Reed Decl. at ¶¶ 59-60.)

As reflected in industry and technical publications as well as by **SUNEARTH** advertising, consumers today may choose between solar electric systems such as those marketed by **NINGBO** and solar water systems such as those marketed since 1978 by **SUNEARTH**, or some combination of both such systems. *Id*. at ¶¶ 59-68. **NINGBO**'s relevant products and services are clearly in direct competition with **SUNEARTH**'s products and services. *Id*.

Accordingly, the "proximity" or "relatedness" of the goods factor weighs very strongly in favor of a preliminary injunction. Moreover, based on these factors alone because **NINGBO**'s use of the name and mark encompassing the term "Sun-Earth" constitutes use of a name and mark substantially identical in sound, meaning and appearance to **SUNEARTH**'s name and mark, and because the name and mark are used on goods and services not only closely related to, but actually in direct competition with each other, under controlling Ninth Circuit case law, these factors alone compel a determination that there is a likelihood of success on the merits for Plaintiff **SUNEARTH**, as the senior user of the name and mark, on the trademark, trade name and service mark claims here at issue. *See Lindy Pen*, 796 F.2d at 256-57.

        c.      The Strength of the "SUNEARTH" Names and Mark Supports a Finding of a Likelihood of Confusion.

In general, the more unique or arbitrary a mark, the more protection a court will afford it. *Nutri/System, Inc. v. Con-Stan Industries, Inc.*, 809 F.2d 601, 605 (9th Cir. Cal. 1987). In *Surgicenters of America v. Medical Dental Surgeries*, 601 F.2d 1011 (9th Cir. 1979), the Ninth Circuit established a continuum of marks from "generic," afforded no protection; through "descriptive" or "suggestive," given moderate protection; to "arbitrary" or "fanciful," awarded maximum protection. *Id.* at 1014-15. Marks that are "suggestive," "arbitrary," or "fanciful" are inherently more distinctive and, hence, are associated with stronger marks. *Mortgage Elec. Registration Sys. v. Brosnan,* 2009 U.S. Dist. LEXIS 87596 (N.D. Cal. Sept. 4, 2009).

Here, Plaintiffs' mark "SunEarth" as used in the solar energy field is arbitrary or fanciful. At an absolute minimum, Plaintiffs' mark is suggestive, and cannot be generic or descriptive. *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 n.8 (9th Cir. 1998). ("Descriptive marks define qualities or characteristics of a product in a straightforward way that requires no exercise of the imagination to be understood.").  No matter where the mark is placed in the distinctiveness spectrum based on its inherent nature, Plaintiffs' SUNEARTH MARK is a strong mark, deserving of considerable protection from infringing users, bolstered by three decades of continuous and successful use by Plaintiffs. Even a suggestive mark may be transformed into a strong mark where "for example, that mark has received actual marketplace recognition."  *Brookfield Communs. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1058 (9th Cir. Cal. 1999). The more likely a mark is to be remembered and associated in the public's mind with the mark's owner, the greater protection the mark is accorded by trademark laws. *See GoTo.com*, 202 F.3d at 1207; *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir. 1992) (affirming finding that plaintiff's trademark was strong, based on long continuous use); *Accuride International, Inc. v. Accuride Corp.*, 871 F.2d 1531, 1536 (9th Cir. Cal. 1989) ("extensive advertising, length of exclusive use, public recognition and uniqueness" strengthen mark).

- 16 -

SunEarth, Inc., has been recognized in the marketplace for over 30 years in the United States, including without limitation in California and Texas. **Reed Decl.** at ¶¶ 39, 40, 63. **SUNEARTH** products have been installed on the White House and **SUNEARTH**'s products and services have been noted in multiple solar industry publications over the thirty-three (33) plus years of **SUNEARTH**'s presence in the market. *Id*. at ¶¶ 63, 72, 77, 84 and Exhibits 3, 10 and 17 thereto. **SUNEARTH** is noted as "one of the largest products of solar collectors in the United States" and has been "a solar water heating player since 1978." *Id*. Visits to **SUNEARTH**'s website "SunEarthinc.com" alone include over 3,400 visitors every month and **SUNEARTH** has advertising and marketing costs of $66,000 per year that continue to grow. *Id*. at ¶ 10.

The inherent distinctiveness of the term "SunEarth", combined with the years of quality products and services provided by SunEarth, Inc. has allowed the mark to achieve actual marketplace recognition as "a player" in the market for solar collectors for decades. *Id*. at ¶ 65. This factor also weighs heavily in favor of a finding of likelihood of confusion.

        d.      The Concurrent Use of the Names and Mark has Already Engendered Actual Confusion and Supports a Finding of a Likelihood of Confusion.

"Evidence of actual confusion is strong evidence that future confusion is likely but the absence of such evidence is not dispositive." *Official Airline Guides* 6 F.3d at p. 1393. Here, despite the extremely short time period that **NINGBO** has been using the "Sun Earth" name (commencing in 2010, as **NINGBO** represented to the USPTO), consumers, event organizers, and others have displayed actual confusion caused by **NINGBO**'s use of **SUNEARTH**'s name and mark. **Reed Decl.** at ¶ 66. **SUNEARTH** employees have been asked to clarify "which Sunearth are you" by trade show organizers. *Id*. Further, trade show organizers have confused **SUNEARTH**'s logo with **NINGBO**'s logo. *Id*. at ¶¶ 66, 87, and Exhibit 20 thereto. At the Intersolar North America Conference held July 11-14 in San Francisco, at least 10 actual and potential customers of Plaintiffs, without any prompting or solicitation, indicated confusion in words or substance as

to whether **SUNEARTH** endorsed, sponsored, owned or was otherwise affiliated with the entity displaying **NINGBO**'s SUN-EARTH logo. *Id*. at ¶ 66; **Bliss Decl**. at ¶ 6. This actual confusion is "strong" evidence of whether confusion is likely through **NINGBO**'s infringing use of the term "Sun-Earth".

        e.      The Similarity in Channels of Trade Supports a Finding of a Likelihood of Confusion.

"Convergent marketing channels increase the likelihood of confusion." *Sleekcraft*, 599 F.2d at 353. In *Sleekcraft*, the two products were sold in niche marketplaces, including boat shows, specialty retail outlets, and trade magazines. *Id*. at 353. Similarly, here, the two products are sold in niche marketplaces including solar shows, specialty retailers, and trade magazines. Indeed, **SUNEARTH** and **NINGBO** were recently in close proximity at the Intersolar North America 2011 convention in San Francisco, leading to the above referenced multiple incidences of actual confusion in the marketplace. *Id*. at ¶¶ 66, 67. This factor accordingly weighs strongly in favor of a finding of a likelihood of confusion through **NINGBO**'s use of **SUNEARTH**'s mark.

        f.      The Type of Goods and the Degree of Care Likely to be Exercised by the Purchaser Supports a Finding of a Likelihood of Confusion.

"Low consumer care . . . increases the likelihood of confusion." *Playboy Enters. v. Netscape Communs. Corp.*, 354 F.3d 1020, 1028 (9th Cir. Cal. 2004). "In assessing the likelihood of confusion to the public, the standard used by the courts is the typical buyer exercising ordinary caution . . .." *Sleekcraft*, 599 F.2d at 353 (citations omitted). "When the buyer has expertise in the field, a higher standard is proper though it will not preclude a finding that confusion is likely." *Id*. "Similarly, when the goods are expensive, the buyer can be expected to exercise greater care in his purchases; again, though, confusion may still be likely." *Id*.

Here, both parties sell to wholesalers, contractors, builders, and other solar integrators. *Id*. at ¶ 52. While the goods at issue are expensive, the majority of the cost is passed on to end

1  use consumers, and customers depend upon a manufacturer's reputation and warranty to avoid

2  dissatisfied end use consumers. *Id*. Accordingly, buyers in the field rely upon the reputation a

3  manufacturer has in the field and would not be expected to exercise particular caution in each

4  purchase. Accordingly, this factor appears slightly in favor of a finding of likelihood of

5  confusion, or at worst to be equally balanced.

       g.     Defendants' Actions Portray an Intent to Trade on Plaintiffs' Goodwill and Reputation.

8      "When the alleged infringer knowingly adopts a mark similar to another's, reviewing

9  courts presume that the defendant can accomplish his purpose: that is, that the public will be

10  deceived." *Sleekcraft*, 599 F.2d at 354. The defendants' intent is a critical element. *See*

11  *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 184 F.3d 1107, 1111 (9th Cir. 1999) ("intent to

12  deceive is strong evidence of a likelihood of confusion"). "Where an alleged infringer chooses a

13  mark he knows to be similar to another, one can infer an intent to confuse." *Entrepreneur*

14  *Media, Inc. v. Smith,* 279 F.3d 1135, 1148 (9th Cir. 2002). "This factor favors the plaintiff

15  where the alleged infringer adopted his mark with knowledge, actual or constructive, that it was

16  another's trademark." *Brookfield* 174 F.3d at 1059

18      NINGBO's conduct over the past one and one-half years clearly indicates NINGBO's

19  intent to infringe Plaintiffs' name and mark, and otherwise unfairly to profit from the goodwill

20  earned by years of success in the market by SUNEARTH. Notably, NINGBO first began selling

21  solar panels outside of China in 2004, and immediately began branding its solar panels as "SUN

22  EARTH" solar panels in Europe. Id. at ¶ 77 and Exhibit 10 at p. 3. While NINGBO adopted the

23  SUN-EARTH name as early as 2004 outside of the United States, NINGBO apparently

24  maintained a separate "NBSolar" brand in the United States. *Id*. at ¶ 77 and Exhibit 10 thereto at

25  p. 1. Indeed, NINGBO's "Terms & Conditions" page of its website again repeats and takes care

26  to state that "'Sun Earth' is known as 'NB Solar' in the USA." *Id*. at p. 12.  Notwithstanding

- 19 -

NINGBO's previous efforts to avoid using the "SunEarth" name and mark, NINGBO's marketing today directly contradicts NINGBO's current statements that NINGBO "is known as 'NBSolar' in the USA.". *Id*, **Reed Decl**. at ¶¶ 82, 83, 88 and Exhibits 15, 16, and 21 thereto. Interestingly, NINGBO has also begun to publicize that NINGBO "started making panels in 1978,"[3] (Id. at ¶ 92 and Exhibit 25 thereto) the very same year that SUNEARTH has prominently publicized for decades.

Clearly, NINGBO had identified some reason to differentiate its brand from the "SUN-EARTH" name and brand in the United States on its website and legal notice. *Id*. at ¶ 77 and Exhibit 10 at p. 1 and 12. The only plausible implication is that NINGBO knew SUNEARTH owned and used the "SUNEARTH" mark in the United States and carefully avoided infringing on SUNEARTH's rights until sometime in 2010, when NINGBO intentionally decided to begin using the "SUNEARTH" name and mark in order portray itself as having a "long history" in the international solar market.

This factor accordingly weighs overwhelmingly in favor of a finding of likelihood of confusion.

> h.      The Likelihood of Expansion of the Product Lines Supports a Finding of a Likelihood of Confusion.

"Inasmuch as a trademark owner is afforded greater protection against competing goods, a 'strong possibility' that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing. When goods are closely related, any expansion is likely to result in direct competition." *Sleekcraft*, 599 F.2d at 354 (citations

---

[3] SUNEARTH has extensively marketed that SUNEARTH has been in business since 1978. *See, e.g*. Reed Decl. at ¶ 89 and Exhibit 22 thereto ("PROTECTING OUR ENVIRONMENT – SINCE 1978") and ¶ 91 and Exhibit 24 thereto ("SINCE 1978, AMERICA'S SOLAR THERMAL LEADER"). As Solar Today stated in 2004, SUNEARTH's "global staying power is based on a reputation for proven, work-horse products." *Id*. at ¶ 72 and Exhibit 3 thereto at p. 5 (magazine page 45).

omitted). Where two companies are direct competitors, because confusion over the use of similar marks is already at its maximum, this factor may be less important. *See, Brookfield*, 174 F.3d at 1060. Here, the products of the parties are <u>directly competitive in part</u> and <u>complementary in part</u>. **Reed Decl.** at ¶ 62. As explained by Richard Reed in his Declaration filed contemporaneously herewith, "[a]dditionally, at least to some extent, the two types of solar systems are complementary, in part, as sold to some end use customers in the solar power field." *Id. See also*, *id*. at ¶¶ 54-61. Any expansion by either company may well be into the exact products of the other. *Id*. Photovoltaic systems are a natural expansion area for solar thermal systems, and vice versa.

Indeed, such expansion has already begun. SUNEARTH has itself worked to develop a hybrid photovoltaic thermal array combining the two technologies in a single unit, resulting in significant publicity for SunEarth Inc. *Id*. at ¶¶ 61, 84 and Exhibit 17 thereto. As shown in Exhibit 17 to the declaration of Richard Reed, this project led to SunEarth Inc. being listed in Popular Science Magazine as "one of the largest producers of solar collectors in the United States." *Id*. In addition, SUNEARTH manufactures, sells and services mounting hardware as well as solar collectors. *Id*. at ¶ 8. The SunEarth CompRail PV Module Mounting Hardware is explicitly designed for mounting photovoltaic modules, including modules marketed and sold by Ningbo. *Id*. Moreover, the SunEarth Solaray water heating system is available with a pump that may be plugged in to an AC current source or with a photovoltaic powered pump. *Id*. at ¶¶ 54, 90, and Exhibit 23 thereto. Thus, this factor also weighs heavily in favor of the senior user of the mark, Plaintiff SunEarth, Inc.

       i.      All Relevant Factors Favor Determination of a Likelihood of Confusion and Supports a Finding of a Likelihood of Confusion.

Because each and every relevant factor weighs in favor or heavily in favor of a finding of a likelihood of confusion, the only proper conclusion is that a likelihood of confusion exists if

the same name and mark are used concurrently by Plaintiffs and Defendants. Moreover, combined with the fact that **Plaintiff SUNEARTH** is unquestionably the senior user of the mark in the relevant market (throughout the United States), **SUNEARTH** has established a likelihood of success on the merits of the claim. *Brookfield* 174 F.3d at 1054.

### B. Plaintiffs are Likely to Suffer Irreparable Harm.

In a case involving trademark infringement, the loss of control over the movant's name and reputation and loss of goodwill has consistently been held to constitute irreparable injury. *Sardi's Restaurant Corp. v. Sardie*, 755 F.2d 719, 724 (9th Cir. Cal. 1985) (listing authorities). The Ninth Circuit has recognized that the potential loss of good will or the loss of the ability to control one's reputation may constitute irreparable harm for purposes of preliminary injunctive relief. *Mortgage Elec. Registration Sys. v. Brosnan*, 2009 U.S. Dist. LEXIS 87596, 24-25 (N.D. Cal. Sept. 4, 2009) (*citing Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush and Co., Inc*., 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm."); *Apple Computer, Inc. v. Formula Int'l Inc.*, 725 F.2d 521, 526 (9th Cir. 1984) (finding irreparable injury where "district court could reasonably have concluded that continuing infringement would result in loss of control over Apple's reputation and loss of good will"). The loss of good will and damage to reputation are considered irreparable due to the inherent difficulty in quantifying such loss. See *Rent-a-Center, Inc. v. Canyon Television & Appliance*, 944 F.2d 597, 603 (9th Cir. 1991).

Here, Plaintiffs have worked for over 30 years to establish a name and reputation for "the proven capability to outperform the competition." **Reed Decl.** at ¶¶ 63 and 68. **SUNEARTH** is known through industry and other major publications as "a player" and "one of the largest producers of solar collectors in the United States." *Id*. **SUNEARTH**'s manufacturing facilities are

in California, perhaps coincidentally just down the road from the place where **NINGBO** has elected to headquarter its U.S. operations, and **SUNEARTH** relies upon a reputation for quality and durability to overcome higher manufacturing costs in order to successfully compete with increasing foreign competition. *Id*. As Solar Today stated in 2004, **SUNEARTH**'s "global staying power is based on a reputation for proven, work-horse products." *Id.* at ¶ 72 and Exhibit 3 thereto at p. 5 (magazine page 45).

Association of the **SUNEARTH** mark with a low cost foreign manufacturer is particularly harmful to **SUNEARTH**'s established reputation and good will. As **NINGBO**'s own senior sales associate stated in an interview standing directly in front of a "Sun-Earth" logo, "basically, a lot of people say, 'well why hire a Chinese product, why not have it made in the United States?'" *Id*. at ¶ 93 and Exhibit 26 thereto at p.2, lines 20-22. Current or potential customers may wonder if **SUNEARTH** has been acquired by some other company, moved all of its manufacturing to China, or otherwise changed its practices and procedures in a way that would make **SUNEARTH** products and services less desirable or reliable, or even subservient to the newly formed Chinese company now bearing the same name and mark.

**NINGBO** has made clear that it is currently focused on the United States market. The first facility outside of the manufacturing facility in China was acquired by **NINGBO** in Chino, California in 2009. *Id* at p.1, lines 15-17. **NINGBO**'s marketing under its assumed new name has already led to actual consumer confusion in the market. *Supra* § III(A)(ii)(4) at p. 17-18. Moreover, **SUNEARTH** has shown a continued likelihood of confusion in the relevant market between **SUNEARTH**'s trade name, trademark, and service mark and **NINGBO**'S use of the name and term "SUN-EARTH." *Supra* § III(A). Current or potential customers' association of **SUNEARTH** with another entity, particularly a Chinese photovoltaic manufacturer, directly harms the good will painstakingly acquired over decades in the market and further eliminates the ability of **SUNEARTH** to control its own reputation and good will.

1

Both the loss of good will and the loss of control of good will constitute irreparable harm

2

that cannot be avoided absent a preliminary injunction. *Apple Computer* 725 F.2d at 526; *Rent-*

3

*a-Center* 944 F.2d at 603. Accordingly, the likelihood of confusion and resultant loss of control

4

over **SUNEARTH**'s name, reputation and goodwill fully establishes that **SUNEARTH** is likely to

5

suffer irreparable harm absent preliminary relief.

6

### C. The Balance of the Equities and the Public Interest Weigh Heavily in Favor of a Preliminary Injunction.

7

8

Finally, the balance of the equities and public interest weigh heavily in favor of a

9

temporary restraining order and preliminary injunction against **NINGBO**. In determining whether

10

to grant injunctive relief, courts "must balance the competing claims of injury and must consider

11

the effect on each party of the granting or withholding of the requested relief." *Amoco*

12

*Production Co. v. Gambell*, 480 U.S., 531, 542 (1987).

13

14

Here, both equity and the public interest clearly weigh in favor of the requested relief.

15

The basic function of a preliminary injunction is to preserve that status quo pending a

16

determination of the outcome on the merits. *Chalk v. U.S. Dist. Court Cent. Dist. of Cal.*, 840

17

F.2d 701, 704 (9th Cir. 1988); *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415,

18

1422 (9th Cir. Cal. 1984). The 'status quo' in this case is the situation as it existed before

19

**NINGBO** began using the name "Sun-Earth" in the United States in July, 2010. *GoTo.com,* 202

20

F.3d at 1210.

21

22

Here, the uncontested status of the parties is that consumers in the solar power field in

23

the United States associate Plaintiff **SUNEARTH** with the SUNEARTH MARK, while **NINGBO** is

24

"known as NBSolar in the United States."  **Reed Decl.** at ¶ 77 and Exhibit 10 thereto.  Plaintiff

25

**SUNEARTH** is accordingly at risk of losing decades of accumulated goodwill and reputation

26

through **NINGBO**'s intentionally wrongful use of **SUNEARTH**'s name and mark. In contrast, no

27

potential harm is caused to **NINGBO** by forcing **NINGBO** to use the name by which it claims on

28

1   its own website front page itself to be "known" in the U.S. market, instead of misleadingly and

2   deceitfully using **Plaintiffs**' name and mark as if **NINGBO** were **Plaintiffs**.

3         In addition to the equitable goal of maintaining the status quo, the Lanham Act's status

4   as a consumer protection statute further weighs heavily in favor of a temporary restraining order

5   and preliminary injunctive relief under § 43(a):

6
              Since § 43(a) was passed as a consumer protection statute, the courts are
7         not reluctant to allow a commercial plaintiff to obtain an injunction even where
          the likelihood of pecuniary injury to the plaintiff may be slight. . . . An injunction
8         protects the consumer from continued false advertising. Money damages, on the
          other hand, primarily aid only the competitor, and he is required to satisfy a
9         higher standard of proof as to injury.

10  *Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc.*, 633 F.2d 746, 753 n. 7 (8th Cir. S.D. 1980)

11  (citing J. McCarthy, Trademarks & Unfair Competition § 27:5A, at 250-251 (1973)).

12        The public is best served by preventing the likelihood of confusion caused by **NINGBO**'s

13  infringing use of **SUNEARTH**'s distinctive trade name, service mark and trademark. *See*, *Id*. This

14  factor accordingly also weighs in favor of the preliminary injunctive relief requested by

15
    **SUNEARTH**.
16

17                          **VI. <u>CONCLUSION</u>**

18        For all of the foregoing reasons, each and every possible consideration militates in favor

19  of enjoining **NINGBO**'s use of the term "Sun Earth" in identifying the source of **NINGBO**'s goods

20  or services. **SUNEARTH**'s Motion for entry of Orders granting interim Preliminary and

21  subsequently Permanent Injunctive relief is well-taken, and should therefore be granted.

22               RESPECTFULLY SUBMITTED this 30th day of November, 2011.

23

24         /s/ Stephen B. Mosier
           Stephen B. Mosier, Esq. (*pro hac vice*)
25         Norman P. Soloway, Esq. (*pro hac vice*)
           Clark E. Proffitt, Esq. (*pro hac vice*)
26         4640 E. Skyline Drive
           Tucson, AZ 85718
27         Attorneys for Plaintiffs SunEarth Inc., and Solaray Corporation

28

- 25 -

1

Daniel N. Ballard, Esq.
770 L St., Suite 950
Sacramento, CA 95608
Attorneys for Plaintiffs SunEarth, Inc., and Solaray Corporation

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

Pursuant to Civil L.R. 5-5 and 5-6, I certify that on November 30, 2011, I caused service of the following document: **PLAINTIFFS' MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION RELIEF** to be made by electronic filing with the Clerk of the Court using the CM/ECF System, which will send a Notice of Electronic Filing to all counsel of record who have filed a Notice of Consent to Electronic Service in this action.

COPIES of the foregoing were emailed this 30th day of November, 2011, to:

James J. Foster, Esq.
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
dwolf@wolfgreenfield.com

 /s/ Traci Lopez