IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUNEARTH, INC.; and THE SOLARAY CORPORATION,<br><br>      Plaintiffs,<br><br>  v.<br><br>SUN EARTH SOLAR POWER CO., LTD.; NBSOLAR USA, INC.; and DOES 1-10,<br><br>      Defendants.<br>_____/ | No. C 11-4991 CW<br><br>ORDER GRANTING IN PART, AND TAKING UNDER SUBMISSION IN PART, PLAINTIFFS' MOTION FOR CIVIL CONTEMPT (Docket No. 90) |

Plaintiffs SunEarth, Inc. and The Solaray Corporation move to hold Defendants Sun Earth Solar Power Company, Limited (SESP) and NBSolar USA, Inc. in civil contempt for violation of the preliminary injunction entered in this case. Defendants oppose Plaintiffs' motion. Having considered the arguments presented by the parties in their papers and at the hearing, the Court grants Plaintiffs' motion in part and takes their request for attorneys' fees under submission.

## BACKGROUND

On October 11, 2011, Plaintiffs initiated this trade name and trademark infringement action, alleging that Defendants have misappropriated and infringed upon Plaintiffs' "Sun Earth" trademark, service mark and trade name.

On February 2, 2012, the Court granted Plaintiffs' motion for a preliminary injunction, generally enjoining Defendants from using the "Sun Earth" name and mark within the United States during the pendency of this action. Docket Nos. 60, 63. The initial preliminary injunction went into effect on February 17,

2012 upon Plaintiffs' payment of a $5,000 bond. Docket No. 67. At the time, instead of enjoining Defendants' use of the Sun-earth.com, SunEarthpower.com, and SunEarthpower.net domain names, the Court ordered the parties to attempt to reach an agreement on this issue, or to move for a modification to address it, along with one other issue. Docket No. 63, 37-38.

On February 24, 2012, Defendants filed a motion to amend the preliminary injunction, among other things, to add terms addressing the use of the domain names. Docket No. 69.

On March 6, 2012, Plaintiffs filed a motion to hold Defendants in civil contempt for continuing to use the "Sun Earth" name and mark on its websites. Docket No. 77.

On March 13, 2012, the Court granted in part Defendants' motion to modify the initial preliminary injunction and entered a modified preliminary injunction, which took effect immediately. Docket Nos. 79, 80. The modified preliminary injunction provided, in part, that Defendants were enjoined

> 1. From using or continuing to use the words "SUN EARTH" (with or without a space or capitalization or hyphen), either alone or in conjunction with any other words or symbols, or any phonetically or visually similar words or symbols in any combination, as a trademark, service mark or trade name within the United States, its territories or possessions (the "Territory"), provided that:
>
> A. for goods branded as NBSolar rather than Sun Earth, Defendants shall be permitted to identify SESP as the manufacturer, importer or seller of the goods to the minimum extent necessary as required by law or ordinary business customs to operate within the United States under the NBSolar name; and
>
> B. for equipment purchased by Defendants from sellers within the United States for export to SESP in China, Defendants shall be permitted to identify SESP as the buyer of the equipment, to the minimum extent

2

> necessary as required by law or ordinary business customs.
>
> C. Under subsections A and B above, wherever possible, Defendants shall identify themselves as NBSolar and/or an acronym, such as SESP, that avoids the use of the words "SUN EARTH" (with or without a space or capitalization or hyphen). Where Defendants do use the words "SUN EARTH" under the terms of these subsections, Defendants shall not display the words "SUN EARTH" in a distinctive manner of presentation that makes them stand out in any way from other words on the relevant document and shall not use the "Sun Earth" logo.
>
> 2. From using or continuing to use the words "SUN EARTH" (with or without a space or capitalization or hyphen), either alone or in conjunction with any other words or symbols, or any phonetically or visually similar words or symbols in any combination, in, or in connection with, any marketing or advertising or any other promotional materials viewable within the Territory;
>
> 3. From using or continuing to use the words "SUN EARTH" (with or without a space or capitalization or hyphen), either alone or in conjunction with any other words, as an [sic] keyword or other triggering mechanism to generate any internet advertising viewable within the Territory; and
>
> 4. From importing into the Territory any goods upon which the words "SUN EARTH" (with or without a space or capitalization or hyphen), either alone or in conjunction with any other words or symbols, or any phonetically or visually similar words or symbols in any combination, appears or are shown on the packaging for such goods.

Modified Preliminary Injunction, Docket No. 80, 1-3. The injunction further required Defendants to take certain affirmative steps, including that

> 7. Defendants shall, within thirty days of the date of this Order:
>
> A. Take reasonable measures to ensure that visitors from within the United States who visit Sun-Earth.com, SunEarthPower.com, and SunEarthPower.net are presented with a webpage that: (1) allows them to choose to continue to either the nbsolar.com home webpage or the sunearthinc.com home webpage; and (2) contains language clarifying that the companies associated with those webpages are not affiliated with one another;

3

>    B.  Replace the Sun-Earth logo which currently appears at the top of each webpage on the nbsolar.com domain with the nbsolar mark and logo;
>
>    C.  Add to the nbsolar.com home webpage the following explanation, or a similar variation thereof: "NBSolar USA, Inc. has no affiliation with SunEarth Inc. or The Solaray Corporation. NBSolar USA, Inc., is a distributor within the United States of products carrying the NBSolar brand, manufactured by Sun Earth Solar Power Co., Ltd., of Ningbo, China. Outside of the United States, Sun Earth Solar Power Co., Ltd. sells products under the brand Sun-Earth. All sales in the United States, however, use only the NBSolar brand."; and
>
>    D.  Remove all uses of "Sun Earth" from the keyword metatags of the nbsolar.com domain.
>
> . . .
>
> 10. Defendants shall file with the Court and serve on Plaintiffs, within thirty-five (35) days after the effective date of the original Preliminary Injunction, a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied.

Id. at 3-4.

On March 16, 2012, Plaintiffs withdrew their first motion for civil contempt. Docket No. 82.

On March 23, 2012, Defendants filed a report pursuant to paragraph ten of the modified preliminary injunction, stating

> Since the injunction has been in effect, Defendants have:
>
> 1. Not shipped to the United States any product on which SUN EARTH appears;
>
> 2. Not marketed any product for sale to United States customers under the SUN EARTH brand;
>
> 3. Not distributed any marketing, advertising, or other promotional materials in the United States using SUN EARTH;
>
> 4. Removed all uses of SUN EARTH from the keyword metatags of the nbsolar.com domain;
>
> 5. Taken steps so that United States visitors to the Sun-Earth.com, SunEarthPower.com, and SunEarthPower.net

>websites are either blocked or redirected to a homepage with the NBSolar logo and the statement "Nbsolar products are manufactured by Sun Earth Solar Power Co., Ltd. of Ningbo, China. Outside of the United States, Sun Earth Solar Power Co., Ltd. sells products under the brand Sun-Earth. All sales in the United States, however, use only the NBSolar brand. Nbsolar USA Inc. is a distributor of nbsolar brand within the United States."; and
>
>6. Replaced the SUN EARTH logo on the nbsolar.com domain with the nbsolar mark and logo.

Docket No. 83, 2.

On April 24, 2012, Plaintiffs filed the instant motion asking the Court to find Defendants in civil contempt for violating the modified preliminary injunction. Docket No. 90.

## LEGAL STANDARD

A district court has the inherent authority to enforce compliance with its orders through a civil contempt proceeding. International Union, UMWA v. Bagwell, 512 U.S. 821, 827-28 (1994). A contempt sanction is considered civil if it "is remedial, and for the benefit of the complainant." Id. A contempt fine is considered remedial if it either "coerce[s] the defendant into compliance with the court's order, [or] ... compensate[s] the complainant for losses sustained." United States v. United Mine Workers, 330 U.S. 258, 303-304 (1947). See also Whittaker Corp. v. Execuair Corp., 953 F.2d 510, 517 (9th Cir. 1992).

"The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the [non-moving party] violated a specific and definite order of the court." FTC v. Affordable Media, LLC, 179 F.3d 1228, 1239 (9th Cir. 1999) (quoting Stone v. City & County of San Francisco, 968 F.2d 850, 856 n.9 (9th Cir. 1992)). The contempt "need not be willful, and there is no good

5

faith exception to the requirement of obedience to a court order." In re Dual-Deck Video Cassette Recorder Antitrust Litig., 10 F.3d 693, 695 (9th Cir. 1993). "But a person should not be held in contempt if his action appears to be based on a good faith and reasonable interpretation of the court's order." Id. (internal formatting and quotations omitted). "'Substantial compliance' with the court order is a defense to civil contempt, and is not vitiated by 'a few technical violations' where every reasonable effort has been made to comply." Id. (citing Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc., 689 F.2d 885, 891 (9th Cir. 1982)).

Thus, the Court may grant a motion for an order of contempt if it finds that Defendants (1) violated the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence. Id. Once the moving party has met its burden, the burden "shifts to the contemnors to demonstrate why they were unable to comply" with the court order. Stone, 968 F.2d at 856 n.9 (citing Donovan v. Mazzola, 716 F.2d 1226, 1240 (9th Cir. 1983)). "They must show they took every reasonable step to comply." Id. (citing Sekaquaptewa v. MacDonald, 544 F.2d 396, 406 (9th Cir. 1976)).

When a court imposes civil sanctions, "[g]enerally, the minimum sanction necessary to obtain compliance is to be imposed." Id. However, "the district court retains discretion to establish appropriate sanctions." United States v. Bright, 596 F.3d 683, 695-96 (9th Cir. 2010) (citing Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1473 (9th Cir. 1992)). "Given the

6

remedial purpose of the sanction, a finding of contempt must be accompanied by conditions by which contempt may be purged, spelled out in either the original order or the contempt order." Id.

## DISCUSSION

Plaintiffs contend that Defendants are in violation of the modified preliminary injunction in three ways. First, they argue that Defendants have not modified their websites to comply with the terms of the injunction. Second, they allege that Defendants have continued to use the infringing name and mark to advertise in a major solar power industry publication that is widely distributed within the United States. Finally, they assert that Defendants' March 23, 2012 compliance report failed to comply with the requirements of the injunction.

I. Defendants' websites

Plaintiffs offer evidence that Defendants violated the modified preliminary injunction in multiple ways related to their websites. First, Plaintiffs offer evidence that, on April 20, 2012, more than thirty days after the Court entered the modified preliminary injunction, Defendants had not made the changes to the Sun-Earth.com, SunEarthPower.com, and SunEarthPower.net websites required by paragraph seven of the modified preliminary injunction. On that date, visitors within the United States were not presented with a webpage allowing them to choose to continue to either the nbsolar.com home webpage--Defendants' United States website--or the sunearthinc.com home webpage--Plaintiffs' website. Proffitt Decl. ¶ 3 (describing visit to each page on April 20, 2012). The webpage also did not contain language clarifying that the companies associated with those webpages are not affiliated

7

with one another.  Id.  Instead, visitors were presented with a message stating, "No results found."  Id.  Plaintiffs also provide evidence that, as of April 23, 2012, Defendants' webpages that had been hosted at these addresses appeared in the United States instead at Sun-Earth.com/web, SunEarthPower.com/web, and SunEarthPower.net/web, and continued prominently to display the "Sun Earth" mark, in violation of paragraphs one through three of the modified preliminary injunction.  Id. at ¶¶ 5-8 (offering evidence of webpages as they appeared on April 23, 2012). Plaintiffs offer further evidence that, as of April 23, 2012, the title and metadata for the SunEarthPower.com/web page contained multiple uses of the term "Sun Earth."  Id. at ¶ 9.  Search engines typically use such data to determine a suitable response to a search query.  Id.  Finally, Plaintiffs have submitted evidence that the SunEarthPower.com/web website appeared on April 23, 2012 within the first page of search results on the search engine Bing.com for the term "Sun-Earth."  Id. at ¶ 4, Ex. A.

Defendants do not dispute the accuracy of Plaintiffs' evidence.  Instead, they offer additional evidence to explain their own actions and the violations identified by Plaintiffs. Defendants present evidence that, after the Court issued the modified preliminary injunction, they instructed the third-party information technology (IT) company that maintains their websites to "set up a choice webpage and take whatever technical measures were necessary to assure that United States visitors to http://www.sunearth.com, http://www.sunearthpower.com, and http://www.sunearthpower.net were redirected to the choice

8

webpage." Dong Decl. ¶ 6.[1] They argue that Plaintiffs were unable to visit the Sun-Earth.com, SunEarthPower.com, and SunEarthPower.net webpages on April 20, because, shortly before April 12, 2012, which was thirty days from the date the Court entered the modified preliminary injunction, they discovered that "there were mistakes in how the IT company had done the job"-- although they do not state what these mistakes were--and so they told the company to block all access to the websites from United States visitors until the problems were fixed. Dong Decl. ¶ 7; Foster Decl. ¶ 3. On or before April 24, Defendants were told by the IT company that it had finished the work and unblocked access. Dong Decl. ¶ 8. By April 24, 2012, the Sun-Earth.com, SunEarthPower.com, and SunEarthPower.net webpages were properly offering a choice between the nbsolar.com and sunearthinc.com webpages. Id.; Rutt Decl. ¶ 2.

As to the Sun-Earth.com/web, SunEarthPower.com/web, and SunEarthPower.net/web pages, Defendants contend that these were not encompassed within a literal reading of the modified preliminary injunction, which refers only to Sun-Earth.com, SunEarthPower.com, and SunEarthPower.net in paragraph seven. Opp. at 7 (citing Dong Decl. ¶ 14). However, this is an unreasonably limited reading of the injunction, which clearly encompasses all subpages within those domain names. Further, the prohibitions contained in the first several provisions of the injunction apply

---

[1] Defendants use the term "choice webpage" to refer to the webpage that allows visitors to choose between Plaintiffs' sunearthinc.com webpage and Defendants' www.nbsolar.com webpage. Dong Decl. ¶ 4.

9

broadly to prohibit Defendants from using the "Sun Earth" mark in conjunction with all business within the United States, not just on particular websites at particular addresses.

Defendants also contend that any possible violations by the use of the Sun-Earth.com/web, SunEarthPower.com/web and SunEarthPower.net/web pages were unintentional. Defendants speculate, without offering evidentiary support, that their IT company created the Sun-Earth.com/web, SunEarthPower.com/web, and SunEarthPower.net/web pages and directed attempts from outside the United States to contact the original homepages to these new pages, while directing attempts to contact the original homepages inside the United States to the choice webpage. They provide evidence that they did not foresee that a United States user would reach the Sun-Earth.com/web, SunEarthPower.com/web, and SunEarthPower.net/web pages directly, instead of first going to the original homepages. Dong Decl. ¶¶ 12, 14. In their brief, Defendants also argue that they "were not aware of those pages' existence at those addresses," implying that only the IT company knew of their existence. Id. While Defendants cite a declaration in support of this statement, it is not stated in the paragraph cited. See Dong Decl. ¶ 14. However, Defendants' claim that they did not know the sites existed at all contradicts their claim that they simultaneously thought that no one in the United States would try to access these sites, because to know enough to think the latter, it is necessary to know the former. Further, even if this explanation were credited, lack of willfulness is not a defense to a civil contempt finding. See Dual-Deck, 10 F.3d at 695.

10

1    Defendants also maintain that they promptly took steps to
2 address the issue of the Sun-Earth.com/web, SunEarthPower.com/web,
3 and SunEarthPower.net/web pages when they first learned of it
4 through Plaintiffs' filing of the instant motion.  At that time,
5 Defendants instructed their IT company to disable temporarily
6 these pages while they ensured that visitors to these sites from
7 the United States were presented with the choice page.  Dong Decl.
8 ¶ 13.  This has now been completed.  Dong Decl. ¶ 13; Rutt Decl.
9 ¶ 4.

10    The Court finds that Plaintiffs have offered clear and
11 convincing evidence that Defendants violated the court order, by
12 not ensuring that the "choice webpage" was accessible more than
13 thirty days after the order, maintaining the Sun-Earth.com/web,
14 SunEarthPower.com/web, and SunEarthPower.net/web pages as
15 accessible from within the United States with substantial use of
16 the "Sun Earth" name and mark, and allowing those webpages to use
17 keywords that include "Sun Earth" to trigger advertising within
18 the United States.  Defendants have not shown that they did
19 everything reasonably within their power to avoid these issues.
20 For example, Defendants could have hired an IT company competent
21 to perform the work, provided appropriate and clear instructions
22 to the IT company to carry out their compliance with the
23 injunction and required the IT company to provide them with an
24 explanation and verification of all the steps that it took in
25 response to their instructions.

26    However, it is also undisputed that Defendants have brought
27 their websites into compliance; when United States users access
28 any of Defendants' websites, they are presented with the choice

11

website, and they can choose to go to Plaintiffs' website or to Defendants' nbsolar website, which does not include the "Sun Earth" mark or logo and instead includes the nbsolar mark. Thus, much of the civil sanction requested--$3,000 per day until Defendants come into compliance and a registry hold on Defendants' websites--is not required to coerce compliance and could serve only punitive purposes, which are not permitted for civil sanctions. Thus, the Court declines to impose these sanctions at this time.

II. Advertisements in the Photon International magazine

Plaintiffs contend that Defendants have violated the preliminary injunction by continuing to use the "Sun Earth" words to advertise in an industry magazine, Photon International.

According to its website, "PHOTON International is the world's leading solar power magazine," and has more than 33,000 copies distributed worldwide each month, including 5,000 copies printed in Chinese. Proffitt Decl. ¶ 11, Ex. 7, 2. Its copies are distributed in a variety of ways, including by subscription and at tradeshows. Id. Photon International has more than 5,000 subscribers, and twenty-four percent of their subscribers are located in North America. Id. Of the subscribers in North America, ninety-four percent are located in the United States. Id. Thus, more than 1,100 copies are sent to subscribers within the United States monthly. Of the remaining 28,000 monthly copies, an unknown number is distributed at tradeshows, some of which are held in the United States. Proffitt Decl. ¶ 12, Ex. 7.

Defendants admit that they placed an advertisement in the February and March 2012 issues of Photon International. Dong

12

1  Decl. ¶ 15. The half-page advertisement includes the "Sun-Earth"
2  name and symbol a number of times, clearly violating paragraphs
3  one and two of the modified preliminary injunction. Mosier Decl.,
4  Ex. 10. Defendants attest that they placed these advertisements
5  in December 2011, before the original injunction was entered.
6  Dong Decl. ¶ 15. They do not offer evidence, however, that they
7  took every reasonable effort to comply with the injunction. For
8  example, they offer no evidence that they contacted the publisher
9  to ask to have the advertisements removed from the publication
10 after the injunctions were entered or to have the advertisements
11 printed only in the copies circulated outside of the United
12 States. Further, with their reply, Plaintiffs submit evidence
13 that Defendants have placed another identical advertisement in the
14 April 2012 issue of Photon International, which demonstrates that
15 Defendants have continued to violate the terms of the injunction.
16 Reed Decl. ¶ 3, Ex. 11. Plaintiffs also provide evidence that
17 they brought this to Defendants' attention repeatedly before
18 filing the instant motion, and Defendants did not respond in any
19 way. Mosier Decl., Ex. 10.
20       In response, Defendants offer evidence that they have ceased
21 advertising in a separate magazine by the same publishers that is
22 aimed primarily at the United States market. Dong Decl. ¶ 17.
23 The fact that Defendants ceased advertising in another periodical,
24 however, does not respond to the issue of whether they violated
25 the injunction by continuing to advertise in the United States in
26 Photon International by using Plaintiffs' name and mark.
27       Defendants appear to argue that the circulation level within
28 the United States is de minimis. However, this argument is

13

unavailing; of the subscribers to the magazine located anywhere in the world, almost a quarter of them are within the United States.

Defendants also argue that this publication is primarily aimed at the photovoltaic market, not the solar collector market. However, this argument is irrelevant; the injunction did not provide any exception for advertisements that were directed primarily at the photovoltaic market. Further, this Court already found that the parties' goods were close in proximity to one another and would engender confusion for a variety of reasons, including that customers choose between both types of products, they are installed by the same contractors in California, and there are many currently registered marks used to brand both products similar to Plaintiffs' and products similar to Defendants'.

Defendants ask the Court to modify the preliminary injunction to "allow SESP to advertise in publications principally directed to (Asian [sic] and European markets," so that they can continue to advertise in Photon International. Opp. at 9. The Court declines to modify the preliminary injunction. Contrary to Defendants' characterization, the current injunction does not prevent them from advertising in Europe, but rather limits their advertising within the United States.

The Court finds that Plaintiffs have met their burden to establish that Defendants are in contempt of the preliminary injunction for continuing to advertise within the United States using the "Sun Earth" name and mark. The Court will sanction Defendants $5,000 for each issue of Photon International distributed within the United States that contains an

14

1 advertisement in violation of the terms of the modified
2 preliminary injunction, which is placed, or which Defendants have
3 not used reasonable efforts to rescind, on or after the date of
4 this Order.

5 III. Defendants' compliance reports

6     Plaintiffs argue that Defendants have not fulfilled the
7 affirmative obligation under paragraph ten of the modified
8 preliminary injunction that their compliance report "set[] forth
9 in detail the manner and form in which Defendants have complied"
10 with the injunction.

11     The Court finds that Defendants' report is non-compliant on
12 its face. While they make conclusory statements that they have
13 refrained from taking certain actions, they do not specify the
14 manner and form in which they accomplished this, as required by
15 the preliminary injunction. For example, they say that they have
16 "taken steps" to make changes to their websites, so that users
17 within the United States could only access a website with the
18 nbsolar logo, but they do not say what these steps were. As noted
19 above, the steps were insufficient.

20     Further, as Plaintiffs point out, Defendants do not address a
21 number of the terms in the preliminary injunction. For example,
22 the injunction prevents them from "using or continuing to use the
23 words 'SUN EARTH' . . . as an [sic] keyword or other triggering
24 mechanism to generate any internet advertising viewable within the
25 Territory." Modified Preliminary Injunction ¶ 3. Notably, this
26 restriction is not limited to Defendants' keyword metatags
27 associated with the nbsolar website, and applies to any use of
28 these terms to generate internet advertising of any type within

15

1 the United States. For example, Defendants may not list "SUN
2 EARTH" as a keyword on services like Google AdWords to draw United
3 States traffic to their nbsolar.com website or use these words to
4 trigger the display of banner advertisements for Defendants on
5 third party websites within the United States. Defendants do not
6 address this term in their report, and instead only state that
7 they removed "Sun Earth" from the keyword metatags of the
8 nbsolar.com domain name, as required by a separate section of the
9 injunction. See id. at ¶ 7(D).

10 Similarly, while Defendants state that they did not "market
11 for sale" or ship to the United States any products with the "Sun
12 Earth" name and mark after the preliminary injunction was entered,
13 they do not state that they have not actually sold products that
14 they already had imported to the United States with that logo.

15 Further, the fact that the Photon International
16 advertisements were circulated after the injunction went into
17 effect demonstrates that the representations made in the
18 compliance report filed by Defendants were not complete. In the
19 report, Defendants state that since the injunction went into
20 effect, they have "[n]ot distributed any marketing, advertising,
21 or other promotional materials in the United States using SUN
22 EARTH." The report does not disclose the Photon International
23 advertisements, which were distributed in the United States after
24 the preliminary injunction went into effect.

25 Thus, Plaintiffs have presented clear and convincing evidence
26 that Defendants are in contempt of the preliminary injunction for
27 failing to file a correct and complete compliance report. Within
28 two weeks of the date of this Order, Defendants shall file a new

16

sworn compliance report, addressing the specific steps that they have taken through that date to comply with each provision of the modified preliminary injunction.

## CONCLUSION

For the reasons set forth above, the Court GRANTS IN PART Plaintiffs' motion to hold Defendants in civil contempt (Docket No. 90), and finds Defendants in contempt of Court as described above. As previously stated, the Court will sanction Defendants $5,000 for each issue of <u>Photon International</u> distributed within the United States that contains an advertisement in violation of the terms of the modified preliminary injunction, which is placed, or which Defendants have not used reasonable efforts to rescind, on or after the date of this Order.

The Court TAKES UNDER SUBMISSION Plaintiffs' request for attorneys' fees incurred in bringing the motions for a preliminary injunction and for sanctions. The parties shall attempt to settle this issue along with a global settlement of the case, litigate it after settlement, or litigate it along with the trial on the merits if the case is not settled.

At the hearing on June 7, 2012, the Court referred the parties to a Magistrate Judge for a settlement conference to be held as soon as possible. <u>See</u> Docket No. 104. On June 18, 2012, the case was referred to Magistrate Judge Nathanael M. Cousins for settlement. The Court directs the parties to contact Judge Cousins's courtroom deputy promptly to schedule a date for the settlement conference, in accordance with his settlement conference standing order.

The hearing on the parties' cross-motions for summary judgment and a further case management conference are set for August 30, 2012, at 2:00 p.m.

IT IS SO ORDERED.

Dated: 6/20/2012

CLAUDIA WILKEN
United States District Judge

18